Filed 7/24/13  P. v. Ugalde CA2/3
Opinion following rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B234572 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA118436) |
| v. | |
| RAYMOND UGALDE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Phillip H. Hickok, Judge.  Affirmed with directions.

Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Scott A. Taryle and Pamela C. Hamanaka, Deputy Attorneys General, for Plaintiff and Respondent.

Raymond Ugalde appeals from the judgment entered following his conviction by jury for second degree robbery (Pen. Code, § 211) with a finding he committed the offense for the benefit of, at the direction of, or in association with, a criminal street gang (former Pen. Code, § 186.22, subd. (b)(1)). The court sentenced appellant to prison for 13 years. We affirm the judgment with directions.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence, the sufficiency of which as to the robbery is undisputed, established as follows. During the evening of January 28, 2011, Xinran Wang was walking on Belshire near Carson in Hawaiian Gardens. About three or four men in their 20's, including appellant, ran up to Wang and robbed him of his wallet. During the robbery, one of the assailants pointed a gun at Wang, Wang surrendered his wallet to the gunman, and appellant was standing next to the gunman. The group yelled at Wang several times, then fled. Wang lived in Hawaiian Gardens. He was not a gang member.

Wang fled towards his home and called 911. He spoke a little English but, with the help of a Mandarin interpreter, Wang reported the following. Four to five non-Asian high school students approached Wang and, using a gun, robbed him. Each robber was wearing a hoodie, and one robber was wearing a gray hoodie. At the time of the call, Wang was at an address in the 12400 block of 221st. The address was at or near his home. When the operator asked for the cross street, Wang replied, "Carson, Carson they must be around, they live in the neighborhood too I think."[1]

Los Angeles County Sheriff's Deputy Niel Wenland was in a helicopter and responding to the robbery call. He flew to an apartment complex in Hawaiian Gardens. The complex was a hangout for Varrio members.

---

[1] The information Wang reported to the operator is reflected in a transcript of the call. The parties stipulated the transcript did not record the call verbatim.

Wenland saw three or four persons at the complex and they matched the suspects' descriptions. The group fled into the laundry room of the complex. Wenland broadcast to other sheriff's units what he had seen and the address of the complex. Less than 30 seconds later, the group fled and initially ran westbound. Los Angeles County Sheriff's Deputy David Machuca detained codefendant Douglas Burgos, one of the men in that group. (Burgos is not a party to this appeal.)

Los Angeles County Sheriff's Sergeant Oscar Butao, responding to the robbery call, went to an apartment complex at 22009 Belshire.[2] Butao saw appellant exit a laundry room at the location and detained him. No other suspects were inside the laundry room. Wang's wallet was in the laundry room and $20 had been taken from the wallet. Appellant was wearing a dark hooded shirt and dark jeans.

Machuca testified as follows. While Machuca was booking Burgos at the sheriff's station, appellant looked at Burgos and asked, " 'They got you too?' " Appellant knew Burgos. Appellant lived on 224th, and Burgos lived on the west side of Hawaiian Gardens.

Wang identified appellant and Burgos at the preliminary hearing, and testified Burgos was the gunman. Wang also identified appellant at trial. Wang testified at trial that he had been uncertain when he earlier had identified Raymond T. as the gunman from his photograph.

Los Angeles County Sheriff's Detective Lorena Rodriguez, a gang expert assigned to the Lakewood sheriff's station, testified as follows. Hawaiian Gardens was within the area covered by the station. As part of Operation Safe Streets at the station, Rodriguez contacted gang members in the community. Rodriguez also spoke with deputies who worked in Hawaiian Gardens and with citizens. The Varrio Hawaiian Gardens gang (Varrio), a criminal street gang, was the only gang that claimed Hawaiian Gardens as the gang's territory. The area of Belshire and Carson was within Varrio's territory. One of

---

[2]     Appellant concedes this was the same complex to which Wenland referred.

3

the primary activities of the gang was the commission of street robberies. The purpose of committing street robberies was to instill fear in the community. When a group of gang members committed a robbery, other members would know the robbers were willing to commit crimes and acts of violence and this increased the gang members' status.

Rodriguez opined appellant was a Varrio member. Rodriguez based her opinion on reports she had read, conversations with detectives who had contacted appellant, conversations with the detective handling the present case, and appellant's tattoos. Appellant previously had been arrested four times for violating a gang injunction. Varrio members had been served with the injunction, which ordered them not to associate with other Varrio members. Rodriguez opined Raymond T. was a Varrio member and Burgos was a Varrio associate.[3]

In response to a hypothetical question based on evidence in this case, Rodriguez opined the present robbery was committed for the benefit of, and in association with, Varrio. Rodriguez based her opinion on reports she had read and the fact the robbery was committed in Hawaiian Gardens, which Varrio claimed as its territory.

According to Rodriguez, the crime benefited the gang, not financially, but by instilling fear in the community and maintaining a perception in the community that the gang controlled the city. Moreover, the gang members would know from the fact the victim did not speak English that he probably would not report the crime. The gang members did not have to flash gang signs or mention their gang, and the victim did not have to know the robbers were in a gang. Varrio was the only gang in Hawaiian Gardens, and the city was the gang's turf. The fact the gang members were committing

---

[3] Appellant had a Varrio tattoo on his stomach. Appellant had on his right arm a tattoo of a palm tree, another Varrio symbol. On his right arm, appellant had a tattoo that Varrio members commonly wore, i.e., a tattoo that referred to southeast, the area in which Hawaiian Gardens was located. Raymond T. had Varrio-related tattoos on his stomach and left hand, a tattoo on his right hand, and a tattoo indicating southeast on his back.

4

the crime in concert created fear in citizens. Everyone in Hawaiian Gardens knew that Varrio was the only gang in the city.

Moreover, the fact multiple gang members committed the crime was significant to the issue that the crime was committed in association with the gang. If more than two or three gang members committed the robbery, this meant they were committing the crime openly, thereby increasing the gang's status. Appellant presented an alibi defense.

## ISSUES

Appellant claims (1) the trial court reversibly erred by failing to give CALJIC No. 2.90 during the predeliberation instructions, (2) the trial court erroneously denied appellant's motion to bifurcate the gang allegation, (3) cumulative prejudicial error occurred, and (4) insufficient evidence supported the true finding as to the gang allegation. Respondent claims the abstract of judgment must be corrected to reflect the jury convicted appellant of second degree robbery.

## DISCUSSION

1. *The Trial Court Did Not Reversibly Err by Failing to Give CALJIC No. 2.90.*

a. *Pertinent Facts.*

On June 16, 2011, voir dire of the prospective jurors commenced and later concluded. During said voir dire, the court referred to reasonable doubt. In particular, the court indicated the elements of the crime had to be proven beyond a reasonable doubt. The court also indicated the jury had to decide beyond a reasonable doubt if the gang allegation was true.

The prosecutor also referred to reasonable doubt during said voir dire. The prosecutor commented "The burden is on me, and that's to prove this case beyond a reasonable doubt, to prove Mr. Ugalde's guilt beyond a reasonable doubt. There is a robbery and gang allegations [*sic*] in this case." The prosecutor, later discussing an analogy involving murder, a direct perpetrator, and accomplice liability, said, "I have to prove beyond a reasonable doubt both people are guilty of murder. If a person did not shoot, that person should not be found guilty of the same crime." The prosecutor also

5

made references to reasonable doubt, the People's burden to prove beyond a reasonable doubt the crime and gang allegations, and the People's burden to prove the case beyond a reasonable doubt.

Appellant, too, referred to reasonable doubt during the voir dire of the prospective jurors. Appellant's counsel commented, "[w]hen you deliberate after the prosecution presents his evidence, meets his burden of proof, which he has to, you will determine whether there is reasonable doubt the defendant is innocent; in other words, if the prosecution does not prove elements, then you have reasonable doubt." Appellant's counsel subsequently stated, "[w]e are determining whether Mr. Ugalde is guilty of the crimes charged. He does not have to prove his innocence. The prosecution has to prove beyond a reasonable doubt that Mr. Ugalde did the things in the complaint." Appellant's counsel made additional references to reasonable doubt and the People's burden to prove appellant guilty beyond a reasonable doubt.

The jury was later sworn. All jurors had been among the above prospective jurors to whom the court and counsel for the parties had made the above comments.

The trial court gave CALJIC instructions to the jury but, without objection, failed to give CALJIC No. 2.90 as part of the court's predeliberation instructions. The court gave various predeliberation instructions (which we will discuss later) referring to reasonable doubt.[4]

---

[4]  The instructions referring to reasonable doubt were CALJIC Nos. 2.01, 2.61, 2.91, 4.50, and 17.24.2. CALJIC No. 2.01, pertaining to circumstantial evidence, stated, inter alia, "each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt." CALJIC No. 2.61, stated, "[i]n deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him. No lack of testimony on defendant's part will make up for a failure of proof by the People so as to support a finding against him on any essential element." CALJIC No. 2.91, stated, "[t]he burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which he is charged. [¶] If, after considering the circumstances of the identification and any other evidence in this case, you have a reasonable doubt whether defendant was the person who committed the crime, you must

6

Later, during opening argument, the prosecutor discussed reasonable doubt and commented that, during jury selection, the court had talked about reasonable doubt. The prosecutor also stated, "It's my burden of proof to prove this case beyond a reasonable doubt." The prosecutor indicated he wanted to focus on the meaning of reasonable doubt and stated, "you have to have a reasonable doubt as to [appellant's] innocence before you can find him not guilty." The prosecutor also argued perpetrators and accomplices were equally guilty of a crime "if proven beyond a reasonable doubt" and "[t]hat's what we have in this particular case." The prosecutor, discussing CALJIC No. 4.50, argued the alibi witnesses' testimony did not raise a reasonable doubt appellant had been present when the crime was committed.

During closing argument, appellant's counsel argued, inter alia, "the prosecution has not proved this case against [appellant] beyond a reasonable doubt." Appellant distinguished and discussed the presumption of innocence, burden of proof, and reasonable doubt standard.

Appellant also argued he did not have to prove his innocence, the People had to prove he was guilty of robbery beyond a reasonable doubt, Wang was the only eyewitness, and Wang's allegedly inconsistent stories constituted reasonable doubt. Appellant conceded Wang was robbed and appellant argued the issue was identity. At 1:30 p.m. on June 22, 2011, the jury commenced deliberations. At 3:50 p.m., the jury announced it had reached a verdict.

---

give the defendant the benefit of that doubt and find him not guilty." CALJIC No. 4.50, entitled "exemptions and defenses" (capitalization omitted), stated, "[t]he defendant in this case has introduced evidence for the purpose of showing that he was not present at the time and place of the commission of the alleged crime for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, you must find him not guilty." CALJIC No. 17.24.2, an instruction pertaining to the gang allegation, indicated, inter alia, the People had the burden of proving that allegation, and if the jury had a reasonable doubt that the allegation was true, the jury was required to find the allegation to be not true.

b. *Analysis*.

Appellant claims the trial court reversibly erred by failing to give CALJIC No. 2.90 in the predeliberation instructions. We conclude otherwise, considering below the People's burden to prove appellant's guilt beyond a reasonable doubt (hereafter, burden), the definition of reasonable doubt, and the presumption of innocence (hereafter, presumption).

(1) *No Reversible Federal Due Process Error Occurred Regarding the Burden*.

(a) *Applicable Law.*

Insofar as the burden is concerned, in *People v. Aranda* (2012) 55 Cal.4th 342 (*Aranda*), our Supreme Court concluded federal due process requires a trial court in a criminal case to give a predeliberation burden instruction as to each charged offense. (*Id*. at pp. 349-350, 357-358, 365, 367, 373.) *Aranda* also concluded a trial court's failure to give a standard predeliberation burden instruction (i.e., CALJIC No. 2.90 or CALCRIM No. 220) does not constitute federal due process error as long as other predeliberation instructions "otherwise cover" (*id*. at p. 358) the burden requirement. (*Id*. at pp. 350, 358, 361).

Phrased differently, *Aranda* teaches that a trial court does not violate its federal due process obligation to give a predeliberation burden instruction as long as the court gives either (1) a standard predeliberation burden instruction or (2) another predeliberation instruction(s) that otherwise covers the burden requirement as to each charged offense.

For example, in *Aranda*, a jury convicted the defendant of, inter alia, voluntary manslaughter as a lesser included offense of murder and the trial court failed to give a standard predeliberation burden instruction. *Aranda* concluded the failure was not federal due process error as to his voluntary manslaughter conviction because other predeliberation instructions told the jury that, inter alia, the burden of proof beyond a reasonable doubt had to be satisfied before the jury could convict the defendant of any

8

lesser included offense of murder, including voluntary manslaughter. (*Aranda, supra*, 55 Cal.4th at pp. 349-350, 358-361, 369, 373.)

However, the *Aranda* court found the trial court's failure to give a standard predeliberation burden instruction violated federal due process with regard to the defendant's conviction for active participation in a gang (hereafter, gang offense) because the other predeliberation instructions did not inform the jury that the burden had to be satisfied as to that offense. However, *Aranda* concluded the error should be reviewed under the harmless error standard enunciated in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705 (*Chapman*)]. (*Aranda, supra,* 55 Cal.4th at pp. 350, 363, 365-368.)

*Aranda* stated, "We believe, . . . that when, as here, the court has not misdefined the reasonable doubt standard[5] in a manner that improperly lowers the prosecution's burden of proof, but nonetheless has failed to satisfy its federal constitutional obligation to instruct on the requirement that the prosecution prove the defendant's guilt of *each* charged offense beyond a reasonable doubt, the effect of the instructional omission, like most errors of constitutional dimension, is amenable to harmless error review. Under these circumstances, other components of the trial, such as the instructions relating to other charged crimes, the verdicts on those counts, and other potentially relevant circumstances (such as the content of the attorneys' closing argument or the nature and extent of a trial court's remarks during jury selection with regard to the reasonable doubt requirement), may support a determination that the theoretical gap left by the court's failure during predeliberation instructions to link the reasonable doubt standard of proof to a certain charged offense had in reality been filled by these other components of trial. In such cases, a reviewing court could determine that there is no reasonable possibility that the jury did not *actually apply* the beyond a reasonable doubt standard in finding the

---

5    The standard is misdefined when the trial court defines the standard by referring to "grave uncertainty" and "substantial doubt." (*Aranda, supra,* 55 Cal.4th at p. 364.)

9

defendant guilty of the offense in question." (*Aranda*, *supra*, 55 Cal.4th at p. 365, second italics added.)

Aranda made clear, however, that, in this particular context, "[n]o matter how overwhelming a court may view the strength of the evidence of the defendant's guilt, that factor is not a proper consideration on which to conclude that the erroneous omission of the standard reasonable doubt instruction was harmless under *Chapman*." (*Aranda*, *supra*, 55 Cal.4th at p. 368.) *Aranda* later observed, "If it can be said beyond a reasonable doubt that the jury must have found the defendant's guilt beyond a reasonable doubt, the error is harmless. If the reviewing court cannot draw this conclusion, reversal is required." (*Ibid.*)

As stated, in *Aranda*, a jury convicted the defendant of, inter alia, a gang offense, and *Aranda* concluded the trial court committed federal due process error by failing to give a predeliberation burden instruction as to that offense. However, based on the facts in *Aranda*, our Supreme Court concluded the error was harmless beyond a reasonable doubt. (*Aranda, supra,* 55 Cal.4th at pp. 369-374.)[6]

(b) *Application of the Law to This Case.*

As mentioned, the trial court in this case did not give a standard predeliberation burden instruction. Moreover, we previously have quoted (see fn. 4, *ante*) all

---

[6] *Aranda* concluded state law, too, requires a trial court in a criminal case to give a predeliberation burden instruction. (*Aranda, supra,* 55 Cal.4th at pp. 350, 352-354.) The applicable state law consists of statutes (Evid. Code, § 502; Pen. Code, § 1096) and case law holding a trial court must instruct on those principles closely and openly connected with the facts before the court and necessary for the jury's understanding of the case. (*Aranda, supra,* 55 Cal.4th at p. 354.) *Aranda* teaches a trial court does not violate its state law obligation as long as the trial court gives either (1) a standard predeliberation reasonable doubt instruction or (2) other instructions that cover the "substance" (*id.* at p. 354) of such an instruction. (*Ibid.*) For example, in *Aranda*, other instructions "covered the . . . principle[] embodied in the standard reasonable doubt instruction, that is, . . . the prosecution's burden of proving guilt beyond a reasonable doubt . . . ." (*Id.* at p. 374.) A trial court's state law error in failing to give a predeliberation burden instruction is subject to review for prejudice under the standard enunciated in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*Aranda, supra,* 55 Cal.4th at p. 354.)

10

predeliberation instructions that the court gave that referred to reasonable doubt. Whether the relevant inquiry asks if those other instructions "covered" the burden requirement (*Aranda, supra*, 55 Cal.4th at p. 358) or "expressly and directly connected the reasonable doubt standard to the charged" (*id.* at p. 373) offense, it appears those instructions were not constitutionally sufficient instructions on the burden requirement.[7] It follows the trial court apparently violated appellant's right to due process by failing to instruct on "the requirement that the prosecution prove defendant's guilt of the [instant robbery] beyond a reasonable doubt." (*Id*. at p. 362 [bracketed material added].)

It does not follow, however, that we must reverse the judgment. At the outset, we note the record fails to demonstrate the trial court misdefined reasonable doubt in a manner that lowered the People's burden of proof; therefore, *Chapman* analysis applies. (*Aranda, supra,* 55 Cal.4th at pp. 363, 365.)[8]

---

[7]     As mentioned (see fn. 4, *ante*), the predeliberation instructions that the court gave that referred to reasonable doubt were CALJIC Nos. 2.01, 2.61, 2.91, 4.50, and 17.24.2 (re the gang allegation). It appears all of these were constitutionally insufficient because they merely connected the burden to "narrow evidentiary . . . determinations" (*Aranda, supra*, 55 Cal.4th at p. 358) and constituted "specific applications of the reasonable doubt standard to certain evidentiary . . . determinations" (*id.* at p. 370), instead of connecting the burden to the general subject of the charged offense of which appellant was convicted. (E.g., *id*. at 362 [rejecting reliance on CALJIC No. 2.01]; *id.* at p. 359 [citing appellate cases rejecting reliance on CALJIC Nos. 2.01 & 2.61]; see, *id.* at p. 361 [rejecting reliance on a gang allegation].) *Aranda* rejected reliance on CALJIC No. 2.01 because the evidence in that case was largely direct evidence. (*Aranda*, *supra*, 55 Cal.4th at p. 362.) That is true in the present case as well. The above does not mean the above predeliberation instructions are irrelevant to the issue of whether the instructional error in this case was harmless beyond a reasonable doubt (see *infra*). (Cf. *id*. at p. 362, fn 11.)

[8]     Appellant, in his pre-*Aranda* opening brief, cited *People v. Phillips* (1997) 59 Cal.App.4th 952 (*Phillips*), and *People v. Crawford* (1997) 58 Cal.App.4th 815 (*Crawford*) for the proposition a trial court's failure to give a standard predeliberation reasonable doubt instruction is structural error requiring automatic reversal. *Aranda* expressly disapproved of *Phillips* and *Crawford* to the extent they so held. (*Aranda, supra,* 55 Cal.4th at p. 367, fn. 12.)

*Aranda* (as well as a case on which *Aranda* relies, i.e., *People v. Mayo* (2006) 140 Cal.App.4th 535) teaches that the due process requirement of instruction on the burden does not necessarily require a standard predeliberation burden instruction, i.e., a *global* instruction requiring proof beyond a reasonable doubt that a defendant committed *any and all* charged offenses. These cases teach it is sufficient that the trial court gives other constitutionally-sufficient instructions requiring proof beyond a reasonable doubt that the defendant committed a charged offense(s).

In the present case, there were really two main issues, i.e., (1) whether someone robbed Wang and (2) if so, whether the robber was appellant, i.e., the identity issue. *Aranda*, describing the constitutional burden, used such language as "the prosecution must prove a *defendant's* guilt of a criminal offense beyond a reasonable doubt" (*Aranda, supra,* 55 Cal.4th at p. 356, italics added) and referred to "the requirement that the prosecution prove the *defendant's* guilt of *each* charged offense beyond a reasonable doubt" (*id.* at p. 365, first italics added). It follows from all of the above that, even absent a standard predeliberation burden instruction, due process is satisfied if a trial court gives constitutionally-sufficient instructions reflecting the requirements that the prosecution prove beyond a reasonable doubt a *person's* guilt of a charged offense(s) *and* the fact that that *person* is the *defendant*.

In turn, it follows that, when a trial court violates due process by omitting instructions on *both* of the above two issues, a reviewing court determining whether the error was or was not harmless may consider the impact of that due process error on each of those two issues. Moreover, when making that determination, a reviewing court may consider "other components of the trial" (*Aranda, supra*, 55 Cal.4th at p. 365) and "other potentially relevant circumstances" (*ibid*.). Having considered those components and circumstances, we conclude, "in light of the particular circumstances of this case" (*id.* at p. 350), and for the reasons discussed below, that, even if the trial court committed instructional due process error, that error was harmless as to each of the above two issues and, therefore, harmless beyond a reasonable doubt.

12

## 1)  *There Was No Prejudice as to the Identity Issue.*

Addressing first the impact of the trial court's alleged instructional error on the identity issue, we believe it is not reasonably possible, given the instructions associated with the identity issue, that the jury would have thought the prosecutor had no burden of proof as to that issue, or that a standard other than beyond a reasonable doubt applied to that issue.  (Cf. *Aranda, supra*, 55 Cal.4th at p. 369.)  In the present case, the trial court gave CALJIC No. 2.91.  That instruction stated, "[t]he burden is on the People to prove beyond a reasonable doubt that *the defendant is the person* who committed the crime with which he is charged.  [¶]  If, after considering the circumstances of the identification and any other evidence in this case, you have a reasonable doubt *whether defendant was the person* who committed the crime, you must give the defendant the benefit of that doubt and find him not guilty."  (Italics added.)  That is, *the trial court actually gave a predeliberation instruction expressly relating the People's burden of proof beyond a reasonable doubt to the identity issue,* one of the two main issues in this case.

The court also gave instructions dealing with narrow applications of the reasonable doubt standard, i.e., CALJIC Nos. 2.01 and 4.50.  Those two instructions related the constitutional burden to the issue of identity.  None of the court's instructions referred to a lesser standard of proof (such as preponderance of the evidence) pertaining to the identity issue.  None indicated that, on the identity issue, the People had no burden or the burden was on appellant.  As our Supreme Court did in *Aranda*, "[w]e find it unrealistic, in light of the given instructions, that the jurors would have believed the prosecution . . . had no burden, or a burden less than beyond a reasonable doubt," (*Aranda*, *supra*, 55 Cal.4th at p. 369) to prove that *appellant was the person* who committed the robbery.  (Cf. *ibid*.)

Like the case in *Aranda*, in the present case, nothing in the jury arguments of counsel for the parties would have misled the jury to believe it should adjudge the identity issue under a standard of proof less than beyond a reasonable doubt.  (Cf. *Aranda, supra*, 55 Cal.4th at p. 370.)  In fact, *Aranda* indicates a reviewing court

13

determining whether due process error is harmless may consider "the content of the attorneys' closing argument." (*Id.* at p. 365.) In the present case, as our recitation of the pertinent facts reveals, counsel for both parties in their respective jury arguments explicitly related the burden to the identity issue, i.e., to *appellant's* guilt.[9] During that argument, the parties disputed whether the People had met that burden, but did not dispute what that burden was.

This is not a case then, where we are simply relying on an instruction that merely explains a "specific application[] of the reasonable doubt standard to [a] certain evidentiary . . . determination[]" (*Aranda, supra*, 55 Cal.4th at p. 370) not expressly related to the charged offense. Instead, CALJIC No. 2.91 was an instruction that conveyed that the prosecution bore the burden of proving that *appellant was the person* who was guilty of the crime. And the jury in fact relied on that instruction to convict appellant of the crime. (*Aranda*, at p. 370.) Similar to our Supreme Court, "[w]e find it unrealistic to conclude that the jury would not have understood that the prosecution bore the . . . burden of proving" (*ibid*.) the identity issue beyond a reasonable doubt. (Cf. *ibid.*) Similarly, "we find it unreasonable to say that the jury would have divined a different standard of proof or ignored one entirely with respect to" (*ibid*.) the identity issue. (Cf. *ibid.*)

Moreover, *Aranda* indicates a reviewing court may consider "other components of the trial" (*Aranda, supra*, 55 Cal.4th at p. 365) and "other potentially relevant circumstances" (*ibid.*) when determining whether any error was harmless. We have recited the pertinent facts regarding the voir dire of the prospective jurors. Both counsel for the parties, during said voir dire, made unobjected-to remarks that referred to the

---

[9]     Although the trial court gave a predeliberation instruction (CALJIC No. 17.31) that told the jury, inter alia, that "[t]he purpose of the court's instructions is to provide you with the applicable law so that you may arrive at a just and lawful verdict," nothing in that instruction prevented the jury from considering the above discussed unobjected-to arguments of counsel relating the burden to the identity issue. (See *Aranda, supra*, 55 Cal.4th at p. 373.)

14

burden as it related to the identity issue. Further, robbery was the only offense at issue in this case. There were therefore no instructions suggesting the burden, or standard, of proof as to the identity issue applied to another offense but not to robbery.

In light of all of the above, *including the fact the court actually gave a predeliberation instruction expressly relating the People's burden of proof beyond a reasonable doubt to the identity issue*, "[w]e can say beyond a reasonable doubt on the record before us that the jury's verdict" (*Aranda*, *supra*, 55 Cal.4th at p. 373) as to the identity issue "must have been based on a finding" (*ibid*.) that, beyond a reasonable doubt, appellant was the person who committed the robbery. (Cf. *ibid*.)

2) *There Was No Prejudice as to the Issue Someone Committed Robbery*.

Addressing the impact of the trial court's alleged instructional due process error on the issue of a *person's* guilt of the charged offense, we believe, for the reasons discussed below, that it is not reasonably possible, given the instructions associated with the *identity* issue, that the jury would have thought the prosecutor had no burden of proof as to the issue of whether *someone* committed the robbery, or that a standard other than beyond a reasonable doubt applied to the latter issue. (Cf. *Aranda, supra*, 55 Cal.4th at p. 369.)

*Aranda*, when determining whether the omission of a predeliberation burden instruction was harmless error as to a conviction for a *gang offense*, considered predeliberation burden instructions that were given as to a *completely different offense* (i.e., voluntary manslaughter). (*Aranda, supra*, 55 Cal.4th at pp. 369-370.) If so, when determining whether the omission of a predeliberation burden instruction was, if error, harmless as to appellant's conviction for *robbery*, we certainly may consider a predeliberation instruction that was given as to that *same robbery*, i.e., CALJIC No. 2.91, that instructed that the prosecution had to prove beyond a reasonable doubt that appellant was the person who committed the robbery.

15

CALJIC No. 2.91 expressly referred both to the People's burden of proof beyond a reasonable doubt, and to the crime charged. The instruction expressly indicated that that burden applied to the identity issue. The instruction did not expressly indicate that that burden applied to the issue of whether *someone* committed the crime, although arguably the instruction suggested the burden did. In any event, nothing in the instruction referred to a lesser standard of proof, or a different burden, as to the issue of whether someone committed the crime.

Moreover, considering instructions dealing with narrow applications of the reasonable doubt standard, we also note CALJIC Nos. 2.01, 2.61, and 4.50 discussed the constitutional burden to prove that *someone* committed the crime. None of the court's instructions in this case referred to a lesser standard of proof as to that issue. None indicated that, on that issue, the People had no burden or the burden was on appellant.

Indeed, we find the " 'most logical response' " (*Aranda, supra*, 55 Cal.4th at p. 370) by the jury to the absence of an instruction specifically linking the reasonable doubt standard to the issue of whether someone committed the robbery would have been to conclude that a determination that someone committed the robbery was subject to the same reasonable doubt standard that had been described in CALJIC No. 2.91 concerning the identity issue, as well in CALJIC Nos. 2.01 and 4.50 on that issue. (*Aranda*, at p. 370.) Nothing in the jury arguments of counsel for the parties would have misled the jury to believe it should adjudge the issue of whether *someone* was guilty on the robbery count under a standard of proof less than beyond a reasonable doubt. (*Ibid.*) In fact, in the present case, counsel for both parties in their respective jury arguments explicitly indicated the People had to prove their "case" (which included the issue that someone committed the crime) beyond a reasonable doubt. Moreover, CALJIC No. 2.91 was an instruction that conveyed that the prosecution bore the burden of proving appellant's guilt of a crime of which he was *actually convicted*. (*Aranda*, at p. 370.)

We find it unrealistic, in light of the given instructions, that the jurors would have believed the prosecution was required to prove that appellant was the person who was

16

guilty of robbery beyond a reasonable doubt but that the prosecution had no burden, or a burden less than beyond a reasonable doubt, to prove *someone's* guilt of the robbery. We find it unreasonable to say the jury would have divined a different standard of proof or ignored one entirely with respect to the issue of whether someone committed robbery. (Cf. *Aranda, supra*, 55 Cal.4th at p. 370)

Another instruction informs our analysis. The court gave CALJIC No. 2.61. That instruction stated, "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him. No lack of testimony on defendant's part will make up for a failure of proof by the People so as to support a finding against him on any essential element."

We note as to the first sentence in CALJIC No. 2.61 that a defendant seeking acquittal and deciding whether to testify could *not* choose to rely on any failure by the People to prove beyond a reasonable doubt every essential element of the charge unless the People had the *burden* to prove beyond a reasonable doubt every essential element of that charge. This is so because, absent such a burden, the defendant, when deciding whether to testify, might conclude there was no burden, the burden of proof was on the defendant, or the standard of proof was less than beyond a reasonable doubt. Absent the burden on the People, a failure of proof by the People would produce no consequence on which the defendant could rely when deciding whether to testify. The first sentence of CALJIC No. 2.61 presupposes the People have the burden to prove beyond a reasonable doubt every essential element of the charge(s) against the defendant in order to convict the defendant.

We note as to the second sentence in CALJIC No. 2.61 that a lack of proof on the defendant's part *would* make up for a failure of proof by the People so as to support a finding against the defendant on any essential element if the defendant had the burden to prove the absence of the essential elements. The second sentence presupposes the People have the burden of proof as to the essential elements.

17

Moreover, we may consider "the nature and extent of a trial court's remarks during jury selection" (*Aranda, supra*, 55 Cal.4th at p. 365), "other components of the trial" (*ibid.*), and "other potentially relevant circumstances" (*ibid.*). During voir dire of the prospective jurors, the court commented the jury was to "see if [the elements] have been proven beyond a reasonable doubt." Both counsel for the parties, during said voir dire, made extensive unobjected-to remarks that referred to the burden as it related to the issue of whether someone committed the robbery. Again, robbery was the only offense at issue in this case; there were no instructions suggesting the burden or standard of proof as to the issue of whether someone committed an offense applied to another offense but not to robbery.

Finally, appellant repeatedly *conceded* during jury argument that *someone* robbed Wang.[10] The defense evidence presented an alibi defense and appellant's counsel told the jury during argument that Wang's *identification* of appellant was "the whole focus of this case." As discussed, appellant's counsel explicitly indicated during jury argument that the People had to prove their case beyond a reasonable doubt. We thus believe the jury reasonably would have understood appellant to be conceding that *the People had proven beyond a reasonable doubt* that *someone* robbed Wang.

Except for the fact the trial court inadvertently omitted a standard predeliberation burden instruction, this case was tried by the court and parties from start to finish as a criminal case in which the sole burden of proof, as is frequently the case, was the People's burden to prove beyond a reasonable doubt that appellant committed robbery.

---

**10** For example, during jury argument, appellant's counsel commented, ". . . Mr. Wang is an innocent person walking around a neighborhood and was subject to a traumatic experience where people took his wallet with a gun, whether it's fake or not. . . . [¶] But now there comes a big question. Did Mr. Ugalde commit this horrible offense on Mr. Wang?" Appellant's counsel later said he believed "the robbery probably occurred around 7:30" and the "helicopter was after the robbery." Appellant's counsel argued appellant hid from the police helicopter due to a gang injunction "[b]ut the four people who committed the robbery, they know what they did. They take off. They take off, putting distance between themselves and the robbery."

We can say, beyond a reasonable doubt based on all the facts in the record before us, that the jury's verdict on the robbery charge must have been based on a finding of appellant's guilt beyond a reasonable doubt. Any erroneous failure by the trial court to inform the jury in its predeliberation instructions that the prosecution bore the burden of proving beyond a reasonable doubt that appellant committed robbery was harmless beyond a reasonable doubt. (*Aranda, supra*, 55 Cal.4th at pp. 373-374.)[11]

(2) *No Federal Due Process Error or Reversible State Law Error Occurred Regarding the Issue of the Definition of Reasonable Doubt.*

As mentioned, during closing argument appellant's trial counsel distinguished and discussed the presumption of innocence, burden of proof, and reasonable doubt standard. As to the last of these, appellant's counsel stated, "And finally, the third most important thing that [the prosecutor] also mentioned is called reasonable doubt. And . . . it's been attempted to be defined many, many times. It's difficult. The judge told you what reasonable doubt is. But reasonable doubt essentially means there's no other explanation reasonably to explain what the prosecution is alleging. There's no other alternative. It has to be the way that the prosecution said. Because all alternatives don't make sense, it's not reasonable."[12]

The federal Constitution does not require a trial court to *define* reasonable doubt. (*Aranda, supra,* 55 Cal.4th at p. 374.) However, state law does. (*Id.* at pp. 350, 374.) *Aranda* teaches a trial court does not violate this state law obligation as long as the trial court gives either (1) a standard predeliberation reasonable doubt instruction or (2) "other instructions" (*id.* at p. 350) that define reasonable doubt. *Aranda* concluded a trial

---

[11]   In light of our analysis that any federal due process error regarding the burden was harmless beyond a reasonable doubt, any analogous state law error was harmless under the *Watson* standard (see fn. 8, *ante*). There is no need to discuss whether the evidence in this case contributes to a conclusion any error was harmless under *Watson*.

[12]   Previously, during opening argument, the prosecutor had commented to the effect that because the alternatives (the alibi witnesses) to the People's case did not make sense, there was no reasonable doubt.

court's state law error in failing to define reasonable doubt as discussed is subject to harmless error analysis under *Watson.* (*Aranda,* at pp. 350, 354, 375.)

The trial court did not violate the federal Constitution by failing to define reasonable doubt. (*Aranda, supra,* 55 Cal.4th at p. 374.) Assuming the trial court violated state law by failing to provide a definition, the prosecutor commented during jury argument without dispute that the court talked about reasonable doubt during jury selection. Nothing in the record suggests the jury might have been confused about the meaning of reasonable doubt. (See *Aranda*, at p. 375.) The jury did not request clarification of the meaning of that phrase, " 'as it surely would have done had it been confused as to the meaning of [that term].' [Citations.]" (*Id.* at p. 375.) Appellant's argument to the jury concerning the meaning of reasonable doubt was not confusing.

Nothing in the predeliberation instructions or the parties' jury arguments invited the jury to apply no standard of proof, or a standard less than beyond a reasonable doubt, to the robbery charge. (See *Aranda, supra*, 55 Cal.4th at p. 375.) Our previous conclusion any federal due process instructional error was not prejudicial militates towards a conclusion no prejudicial state law instructional error occurred as to the definition of reasonable doubt. Any state law error by the trial court in failing to define reasonable doubt was not prejudicial under the *Watson* standard. (See *Aranda, supra,* 55 Cal.4th at pp. 375-376.)

(3) *No Federal Due Process or State Law Error Occurred Regarding the Presumption.*

*Aranda* concluded the mere failure to instruct on the presumption is not federal constitutional error. (*Aranda, supra*, 55 Cal.4th at p. 356, fn. 9.) Instead, "[T]he constitutional inquiry for failure to instruct on this principle is to evaluate the omission 'in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial.' (*Ibid.*)" (*Id.* at p. 356.) *Aranda* also concluded there is no need to engage in the

20

above inquiry, and a trial court has not failed to instruct on the "principle" (*id.* at p. 356) of the presumption, when the trial court, through another instruction, has "express[ed] . . . the substance" (*id.* at p. 356) of the presumption.[13]

In the present case, the predeliberation instructions included CALJIC No. 1.03. That instruction stated, inter alia, "[y]ou must decide all questions of fact in this case *from the evidence received in this trial* and *not from any other source*." (Italics added.)

In *Aranda*, the trial court gave CALJIC No. 1.00, which instructed the jury that "they must determine defendant's guilt *based on the evidence received at trial*, and *not to consider the fact of his arrest or that he is being brought to trial.*" (*Aranda, supra,* 55 Cal.4th at p. 356, italics added.) *Aranda* relied on this language in CALJIC. No. 1.00 to conclude no federal due process instructional error occurred regarding the presumption.

We believe the language in CALJIC No. 1.03 is sufficiently similar to that in CALJIC No. 1.00, and expressed the substance of the presumption with the result the trial court's failure to include the standard reasonable doubt instruction's admonition on the presumption did not constitute federal constitutional error. (Cf. *Aranda, supra,* 55 Cal.4th at p. 356.) Moreover, even if the trial court failed to instruct on the principle of the presumption, we conclude no federal constitutional error occurred in light of the totality of the circumstances. (See *Aranda, supra,* 55 Cal.4th at p. 356, fn. 9.)

---

[13] The state law analysis applicable to the presumption is essentially the same as the previously discussed state law analysis applicable to the burden (see fn. 8, *ante*). State law requires a trial court in a criminal case to give a predeliberation presumption instruction. (*Aranda, supra,* 55 Cal.4th at pp. 350, 352-355.) A trial court does not violate its state law obligation to give such an instruction as long as the court gives either a standard predeliberation reasonable doubt instruction or other instructions that cover the "substance" (*id.* at p. 354) of such an instruction. (*Ibid.*) For example, in *Aranda*, other instructions "covered the . . . principle[] embodied in the standard reasonable doubt instruction, that is, the presumption of innocence . . . ." (*Id.* at p. 374.) A trial court's state law error in failing to instruct on the presumption is subject to harmless error analysis under *Watson*. (*Aranda*, at p. 354.)

21

Similarly, no state law instructional error occurred regarding the presumption because CALJIC No. 1.03 covered the principle of the presumption. (Cf. *Aranda, supra,* 55 Cal.4th at p. 374.) Even if such state law error occurred, appellant told the prospective jurors that he did not have to prove his innocence. During jury argument, appellant discussed the presumption and argued he did not have to prove his innocence. The burden, when satisfied, rebuts the presumption, and we have already concluded any federal due process instructional error as to the burden was harmless under the *Chapman* standard. We conclude any state law error as to the presumption was harmless under the *Watson* standard. (See *Aranda,* at p. 354.)

2. *The Trial Court Properly Denied Appellant's Bifurcation Motion.*

Prior to trial, appellant moved to bifurcate the trial on the gang allegation. The prosecutor opposed the motion, summarizing the facts of the robbery and arguing as follows. The gang evidence was important to show appellant's motive and intent. Appellant was an admitted Varrio member and Burgos was a gang associate. The gang expert would testify one of the primary activities of the gang was committing robberies. Appellant and Burgos might have been accomplices; therefore, the People would have to prove they shared the intent of the perpetrators.

Appellant argued gang evidence pertaining to the gang allegation would be highly prejudicial to the robbery charge, and there would be insufficient evidence to prove the gang allegation. The court indicated the fact, if true, that appellant was a Varrio member was relevant to the issues of modus operandi, intent, intent to permanently deprive Wang of his wallet, and willingness to apply force or fear to accomplish criminal activity. The court concluded that, under Evidence Code section 352, "relevance outweighs whatever kind of prejudice might be involved to your client." During the predeliberation instructions, the court gave a limiting instruction concerning gang evidence.[14]

---

[14]     The instruction was CALJIC No. 17.24.3, which stated, "Evidence has been introduced for the purpose of showing criminal street gang activities, and of criminal acts by gang members, other than the crime for which defendant is on trial. [¶] Except as you will be otherwise instructed, this evidence, if believed, may not be considered by you to

Appellant claims the trial court erroneously denied his motion to bifurcate. We disagree. The trial court impliedly denied appellant's motion and appellant does not suggest that, prior to that denial, he took any action to narrow the issues the People had to prove as a consequence of his earlier not guilty plea. There is no dispute the proffered gang evidence was admissible to prove the gang allegation. That evidence was also admissible to prove such issues as motive, intent (including intent to permanently deprive Wang of his wallet), and identity as to the robbery charge. (Cf. *People v. Williams* (1997) 16 Cal.4th 153, 193; *People v. Funes* (1994) 23 Cal.App.4th 1506, 1518-1519; *People v. Plasencia* (1985) 168 Cal.App.3d 546, 552-553.) Because the proffered evidence was cross-admissible as to the robbery charge and as against any Evidence Code section 352 objection, the trial court did not err by denying appellant's bifurcation motion. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049-1051.)

Second, even if gang evidence proffered to prove a gang allegation is in a given case inadmissible to prove an underlying crime, factors favoring joinder may still exist, since a unitary trial on allegations pertaining to a substantive crime and a gang enhancement ordinarily avoids the increased expenditure of funds and judicial resources which might result if bifurcation occurred. (*Hernandez, supra,* 33 Cal.4th at pp. 1050-1051.) For this additional reason, the trial court did not abuse its discretion by denying appellant's bifurcation motion. (Cf. *id.* at pp. 1048-1051.)

Finally, the trial court gave CALJIC 17.24.3. That instruction effectively told the jury that they were not to consider the gang evidence in connection with the robbery, they were to consider the gang evidence only in connection with the gang allegation, and the

prove that defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show that the crime or crimes charged were committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members. [¶] For the limited purpose for which you may consider this evidence, you must weigh it in the same manner as you do all other evidence in the case. [¶] You are not permitted to consider such evidence for any other purpose."

jury was not to consider the gang evidence as propensity evidence. We presume the jury followed those instructions. (Cf. *People v. Sanchez* (2001) 26 Cal.4th 834, 852). Any error by the trial court in denying appellant's bifurcation motion was not prejudicial. (Cf. *Watson, supra,* 46 Cal.2d at p. 836.)[15]

3. *Sufficient Evidence Supported the True Finding as to the Gang Allegation.*

Appellant claims there is insufficient evidence supporting the true finding as to the gang allegation. We reject the claim. There is no dispute Varrio was a criminal street gang for purposes of Penal Code section 186.22, subdivision (b)(1). There was substantial evidence as follows. Three or four young men robbed Wang at gunpoint. They included appellant and were wearing similar clothing. Not only did the group rob Wang in concert but appellant and Raymond T. were Varrio members, and Burgos was a Varrio associate. Appellant knew Burgos.

The group yelled at Wang during the robbery, and later fled. When Wang subsequently asked for his credit card, the group ran back towards Wang and successfully instilled fear in him. Wang thought the group lived in the neighborhood. Appellant, Raymond T., and Burgos retreated to an apartment complex on a nearby street. The complex was a Varrio hangout. The group reasonably could have expected assistance from any other Varrio members present, and the familiar environs of the hangout would have facilitated escape or the destruction of evidence.

Shortly after the robbery, a deputy in a helicopter flew to the complex. Appellant, Raymond T., and Burgos fled into its laundry room and later fled out of it. Appellant later exited a laundry room, apparently the same one, and Wang's wallet, less $20, was found inside the laundry room.

The robbery occurred in Hawaiian Gardens which, according to Rodriguez, was territory claimed only by Varrio, the city's only gang. One of the gang's primary activities was the commission of street robberies. Rodriguez opined when a group of

---

[15] We reject appellant's claim that prejudicial cumulative error occurred.

gang members committed a robbery, it enhanced the members' status. Appellant had various gang tattoos. Rodriguez opined to the effect the robbery was committed to benefit the gang because the robbery instilled fear in the community of Hawaiian Gardens. She also opined the robbery was committed in association with Varrio, and the fact multiple gang members openly committed the robbery provided evidence they did so in association with the gang and to increase its status. Appellant, who had been served with a gang injunction, knew he was not supposed to associate with Varrio members.

We conclude there was sufficient evidence to support the true finding as to the gang enhancement. (Cf. *People v. Abillar* (2010) 51 Cal.4th 47, 59-63; *People v. Leon* (2008) 161 Cal.App.4th 149, 163; *People v. Romero* (2006) 140 Cal.App.4th 15, 19-20; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198-1199.) None of the cases cited by appellant compels a contrary conclusion.

4. *The Abstract of Judgment Must Be Corrected.*

The abstract of judgment reflects the jury convicted appellant of second degree burglary. Respondent claims the abstract of judgment must be corrected to reflect the jury convicted appellant of second degree robbery. We agree and we will direct the trial court to correct the abstract of judgment accordingly. (Cf. *People v. Humiston* (1993) 20 Cal.App.4th 460, 466, fn. 3.)

## *DISPOSITION*

The judgment is affirmed.  The trial court is directed to forward to the Department of Corrections an amended abstract of judgment reflecting that in the present case the jury convicted appellant of second degree robbery and not second degree burglary.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH J.

26